BAILES, Judge.
This suit for declaratory judgment concerns a surety agreement executed by defendants Williard G. McAndrew and Billy H. Lyons in connection with a lease between plaintiff and another defendant, Office Services, Inc. The trial court held that the lease was voluntarily terminated by plaintiff but the sureties remained bound to plaintiff by reason of an agreement con-fected between plaintiff and a third person, one Donn Moss, who was found to be the agent of the sureties. This appeal from that judgment was perfected by the two sureties. The end result reached by the trial court is correct. However, we find its findings of fact erroneous. The judgment will be amended and affirmed.
On April 7, 1966, plaintiff, Southern Fleet Leasing Corporation, leased to Office Services, Inc., a Dura-Mach 10 automatic typewriter for a term of eight years. Among the lease provisions is the following:
"(a) The following acts shall each constitute a default: (1) Lessee’s failure to pay any installment of rental when due * * * if such failure continues for more than 10 days after Lessor demands payment; * * * Upon such default, Lessor may, at Lessor’s option, by written notice to Lessee, terminate this lease. ”
Williard G. McAndrew and Billy H. Lyon, husbands of two of the three stockholders of lessee, became sureties to this lease, to-wit:
“In consideration of Lessor entering into this lease with the Lessee, the undersigned hereby guarantees and becomes surety for the Lessee in favor of the Lessor for the full and faithful performance of all Lessee’s obligations under this lease. This obligation of the undersigned surety is joint, several and in solido with the Lessee. The undersigned shall be bound as if principal obligors for all amounts due under this lease, both for the basic term and for the continued month to month basis thereafter, until this lease is terminated by Lessor under the terms of this agreement, and consents in advance to all extensions. The undersigned renounce any plea and benefit of discussion or division granted by law to sureties; it is understood and agreed that without this guarantee or surety agreement, Lessor would be unwilling to enter into this contract of Lease with the Lessee. ”
In February and March of 1966 all stock in Office Services, Inc. was sold to William C. Bennett. Thereafter, the monthly lease payments were allowed to fall in arrears in the sum of $358.82. On May 16, 1966, plaintiff, through its Vice-President, wrote its attorney and authorized him to transmit a demand letter to Office Services and, absent satisfaction within ten days, to proceed with legal action. A copy of this letter was sent direct to Office Services.
Mrs. McAndrew, a former stockholder of lessee and wife of one of the sureties, *217 apparently learned of this situation. She contacted plaintiff’s Vice-President and requested that he contact Mr. Donn Moss, an attorney, and attempt to secure and preserve the leased property and arrange a fair settlement of the obligation of the sureties inasmuch as it was her understanding that Office Services was in financial difficulty. Mr. McAndrew knew of his wife’s action, acquiesed in them and testified that he knew Mr. Moss would enter negotiations with plaintiff on his behalf. The other surety, Mr. Lyon, was out of town at the time and knew nothing of the situation or this arrangement.
On June 2, 1966, Mr. Moss persuaded Mr. Bennett, now majority stockholder and managing officer of Office Services, to turn the leased machine over to Southern Fleet. Southern Fleet made no request for the return of the machine and received it with the understanding that the lease was not thereby terminated.
The negotiations between plaintiff and Mr. Moss resulted in agreements on two alternative courses of action. By letter dated June 6, 1966 to Mr. Moss, plaintiff stated:
“We have terminated this lease, giving effect to a rebate of unearned interest in the amount of $743.00, leaving a balance due Southern Fleet Leasing Corporation of $4409.47, including $358.82 of unpaid rentals.”
The letter then requested that Mr. Moss draft an instrument for the signature of the sureties in which they would acknowledge their obligation to plaintiff in the amount of $4409.47 and in which they would agree to one of the following courses of action:
“1. Pay the rental due of $358.82, take back the machine, and keep the lease current, or,
“2. Authorize George Walker to sell the machine on behalf of Office Services, Inc., and Southern Fleet Leasing Corporation, subject to approval of the price with Mr. Andrew and Mr. I,yon reimbursing Southern Fleet for any deficiency between the $4409.47 and the actual sale price.”
Mr. Moss answered this letter June 8th indicating that Mr. McAndrew thought it best to have the machine sold and to guarantee the difference between the sale price and the total obligation. Mr. Moss also indicated, however, that he had been unable to contact Mr. Lyon because he was away on vacation and did not know what his position on the agreement would be.
When Mr. Lyon returned and became aware of the situation he retained counsel other than Mr. Moss and refused to sign the instrument acknowledging an obligation to plaintiff. Mr. McAndrew also refused to sign the acknowledgement.
Whereupon, plaintiff instructed its attorney to institute suit. Transmitted with this letter of authorization was a “Termination Advice Form” showing the interest rebate and the total amount due on the lease at the time. The evidence in the record shows that this form was only sent to plaintiff’s attorney and not to the lessee or sureties.
Thereafter, other attempts were made to reach an amicable settlement of this matter short of judicial action, the sureties at all times insisting that by their actions they were neither creating additional legal obligations nor waiving any defenses. Mr. Lyon took possession of the machine for approximately six weeks in July and early August in an attempt to sell it but to no avail. In September this suit was filed.
Plaintiff’s position, as sustained by the trial court, is that Donn Moss was the agent for the sureties McAndrew and Lyon and was therefore able to enter an agreement with plaintiff, binding on the sureties, whereby plaintiff terminated the lease *218 in return for a promise that the sureties would protect plaintiff from financial loss. The defendant sureties contend that Mr. Moss was not an agent capable of making a binding agreement for them, that the letter of June 6th and the Termination Advice Form constitute a termination of the lease by plaintiff which under the terms of the surety agreement released the sureties from any obligation to plaintiff.
We note at this point that in plaintiff’s petition there are pleadings which if fragmented and read out of context would indicate that plaintiff was alleging that the lease had been terminated. On this basis defendants objected to any evidence which tended to establish that the lease was not terminated. The trial court, correctly we feel, over-ruled these objections. The pleadings when read as a whole allege that plaintiff agreed to terminate the lease if the sureties would guarantee that plaintiff would suffer no financial loss. The allegations trace the phraseology of the letter of June 6th, which we will discuss fully hereafter, and we can not conclude that this amounts to an allegation and admission by plaintiff that the lease was terminated.
From the foregoing facts we find that the lease was not terminated and is still in effect. In no way can the letter of May 16th, from plaintiff to its attorney authorizing a demand letter, be construed as a termination notice. The letter, a copy of which was sent to Office Services, merely evidences an intent on the part of plaintiff to demand payment of a delinquent debt. Nor do we feel that the letter of June 6th, from plaintiff to Mr. Moss, constitutes a notice of termination. The letter does state, “We have terminated this lease * * but this cannot be read as evidence of intent to actually end the lease. When read with the two alternatives suggested later in the letter, one being to pay the delinquent rentals and keep the lease current, the statement must be considered to refer to a fictitious termination mentally entertained solely for the purpose of determining the “pay-out” or actual balance due on the lease at the time.
Moreover, the record is devoid of evidence that Mr. Moss, the addressee of this letter, was in any way a representative of the lessee. The lease specifically provides that the lease may be terminated only by written notice to the lessee. Thus, even if the letter of June 6th was an actual termination notice it was ineffective inasmuch as it was not directed to the lessee. In fact, Mr. Bennett, the manager of the lessee at the time, definitely testified that no notice of termination of the lease had been received by the company.
Of the same effect is the Termination Advice Form. It was prepared merely as a manner of presenting to plaintiff’s attorney a statement of the amount due on the lease and was in no way designed to give notice to lessee of an intent to terminate the lease. Thus, we hold that the lease is still in effect. There has been no action on the part of plaintiff which could constitute a termination of the lease under its explicit terms.
Nor can we find that plaintiff in any way released the sureties. The evidence before us fails to establish that Mr. Moss was authorized to act for the sureties so as to bind them to any agreement. Though possibly empowered to negotiate on behalf of Mr. McAndrew, the tenor of the correspondence and the testimony in the record leaves us with the distinct impression that this power to negotiate a settlement of this matter did not include the power to enter an agreement binding on Mr. McAndrew. In fact, a condition of the negotiations throughout was that Mr. McAndrew’s signature be obtained on the agreement reached. Failure in this respect, of necessity, precludes the possibility of a release from the original obligation contracted at the time of the perfection of the lease inasmuch as plaintiff’s offer to terminate the lease was *219 never accepted by the sureties. There can be no doubt that Mr. Lyon was not represented by Mr. Moss for he retained other counsel as soon as he became aware of his possible liability.
Defendant sureties also contend they were released by plaintiff’s action in accepting custody of the leased machine from Mr. Bennett because this destroyed their right of subrogation. LSA-C.C. Article 3061. We cannot accept this position, even realizing that the obligations of these sureties must be strictly construed. Plaintiff gained custody of the machine without initiative on its part. The return of the machine to plaintiff by Mr. Bennett was arranged in order to protect the sureties and acceptance of custody of plaintiff was merely a matter of accommodation to the sureties. Moreover, the sureties apparently acquiesced in this custody and in plaintiff’s attempts to place the-machine for sale. The record contains no evidence that plaintiff has taken any action with respect to the machine without the consent of the sureties or which in any way impairs their right to subrogation. Thus, the sureties are still bound to plaintiff under the terms of their original surety agreement.
For the foregoing reasons the judgment of the trial court, declaring that defendants, Williard G. McAndrew, Jr., and Billy H. Lyon, are hound by the agreement made between plaintiff, and Donn Moss, their agent, to the extent that the termination of the lease did not release them from their obligation to plaintiff, is amended and judgment is entered herein declaring that the lease in question is still in effect, never having been effectively terminated, and the sureties, Williard G. McAndrew, Jr. and Billy H. Lyon, are still bound to the lessor, Southern Fleet Leasing Corporation, for the full and faithful performance of the lease by the lessee, Office Supplies, Inc. Defendants to pay all court costs.
Amended and affirmed.